UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JANE WALTERS,

                        Plaintiff,

        -against-                                          5:14-CV-0572 (LEK/ATB)

MEDBEST MEDICAL MANAGEMENT, INC.;
NEUROLOGICAL ASSOCIATES OF
CENTRAL NEW YORK, LLP; STATE
UNIVERSITY OF NEW YORK UPSTATE
MEDICAL UNIVERSITY; UPSTATE
UNIVERSITY HOSPITAL; THE STATE
UNIVERSITY OF NEW YORK; and DR.
CRAIG T. MONTGOMERY,

                        Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        Plaintiff Jane Walters ("Plaintiff") commenced this action alleging sexual harassment and

unlawful retaliation against Defendants MedBest Medical Management, Inc. ("MedBest");

Neurological Associates of Central New York ("Neurological") and Dr. Craig T. Montgomery

(together, "Neurological Associates," or "NA"); and State University of New York Upstate Medical

University, Upstate University Hospital, and the State University of New York (together, the "State

Defendants") (collectively, "Defendants") pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, et seq. ("Title VII"), and New York Human Rights Law, 18 N.Y EXEC. LAW § 290,

et seq. ("NYHRL"), and state law claims for negligence, assault, and battery against Neurological

Associates.  Dkt. No. 1 ("Complaint").  Presently before the Court are Defendants' Motions to

dismiss.  Dkt. Nos. 11 ("NA Motion"); 16 ("State Motion"); 19 ("MedBest Motion").  For the

reasons that follow, the NA Motion and State Motion are granted, and the MedBest Motion is granted in part and denied in part.[1]

## II.    BACKGROUND[2]

### A.  Employment History

Plaintiff was an employee of MedBest, a medical management and employee leasing company that provides staffing to Neurological. Compl. ¶ 8.  Neurological is a neurosurgical medical practice affiliated with MedBest and the State Defendants.  Id. ¶ 9.  Dr. Montgomery is a neurosurgeon, who is a part owner and employee of Neurological, and is also employed by the State Defendants.  Id. ¶ 14.

Plaintiff began working as an administrative assistant at Neurological in January 2011.  Id. ¶ 16.  Her primary responsibilities involved scheduling appointments and contacting patients.  Id. When Plaintiff commenced her employment with Neurological, its former practice manager "warned [Plaintiff] about Dr. Craig Montgomery's hostile demeanor towards the office staff."  Id. ¶ 17.

In April 2011, after a patient arrived for an appointment without the required MRI report, "Dr. Montgomery approached Plaintiff, screaming in her face, 'What the fuck?  Why are these patients showing up without what they fucking need?  Now you have to fucking reschedule them.'"

---

[1] Also before the Court is a Motion to dismiss by the Research Foundation for the State University of New York, which was subsequently dismissed from this action by stipulation of the parties.  See Dkt. Nos. 8; 30; 31.  Accordingly, that Motion is granted with prejudice.

[2] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis of this section.  See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

_Id._ ¶ 18. Dr. Montgomery's behavior caused Plaintiff to shake, cry, and become afraid. _Id._ Dr.

Montgomery continued to be "rude and abusive toward Plaintiff on a regular basis." _Id._

On September 8, 2011, after encountering an issue with a patient Plaintiff had scheduled for

an appointment, Dr. Montgomery "became upset . . . and launched into a profanity-filled tirade

against [Plaintiff] in front of patients." _Id._ ¶ 21.

In or around September 2011, Dr. Montgomery began calling Plaintiff "Is," in reference to

an old Saturday Night Live skit in which a character, with the same first name as Plaintiff, would be

referred to as "Jane is an ignorant slut." _Id._ ¶ 22. Plaintiff was aware of the nickname's reference

and found it offensive. _Id._ "As a joke, employees even had note pads written up with Upstate

Medical University letterhead that had Plaintiff's name, and the 'Is' nickname on them." _Id._ ¶ 23.

In October 2011, Plaintiff required medical treatment and spent two weeks in the hospital,

where she was diagnosed with diverticulitis. _Id._ ¶ 24. "Throughout 2012, Dr. Montgomery

continued to treat [Plaintiff] and the other female employees with hostility." _Id._ ¶ 25. Plaintiff's

health continued to deteriorate as she suffered from increased stress. _Id._

In January 2013, Plaintiff stood with non-party Dr. Nolan outside of Dr. Montgomery's

office, when Dr. Montgomery became upset with Plaintiff over a scheduling conflict he attributed to

her. _Id._ ¶ 26. "Dr. Montgomery again screamed profanities in Plaintiff's face while violently

throwing papers around the office." _Id._ Dr. Montgomery then "exclaimed to the whole office, 'I'm

the fucking boss, I am in charge here, I know what's fucking going on here, I know who is fucking

in the [operating room].'" _Id._ Plaintiff began to cry uncontrollably and shake. _Id._ Dr. Nolan

acknowledged Dr. Montgomery's inappropriate behavior and apologized to Plaintiff. _Id._ ¶ 27.

On May 16, 2013, Dr. Montgomery approached Plaintiff while holding a chart in his hand and said "I oughta fucking smash you in the fucking face for this one." Id. ¶ 28. In a "joking attempt to calm Dr. Montgomery," Plaintiff replied, "Oh please, not too hard this time." Id. Approximately thirty minutes later, Dr. Montgomery approached Plaintiff from behind and whispered into Plaintiff's ear, "This is the third fucking prior surgery case today, and it's fucking early yet." Id. ¶ 29. As Plaintiff turned to acknowledge Dr. Montgomery, "he hit the back of Plaintiff's chair with the patient's charts he was holding hard enough to tip the chair forward and up until its back legs were off the ground." Id. As a result, Plaintiff fell to the ground, injuring her back, neck, and waist. Id. Afraid, Plaintiff immediately vomited. Id.

Later that day, Plaintiff filed a complaint with the Syracuse Police Department regarding the harassment and assault by Dr. Montgomery. Id. ¶ 30. Plaintiff also complained to Neurological's practice manager, Angela Dubose ("Dubose"), who met with Plaintiff to discuss the incident the following day. Id. ¶ 31.

On May 20, 2013, "Plaintiff's primary care physician sent a letter to MedBest removing [Plaintiff] from work until further notice due to Plaintiff's injury." Id. ¶ 33. On June 13, 2013, MedBest sent Plaintiff a letter acknowledging Plaintiff's complaint against Dr. Montgomery. Id. ¶ 34. The letter also indicated that SUNY Upstate Medical University's Office of Employee/Labor Relations had started an investigation into the May 16, 2013 incident. Id. On August 9, 2013, Plaintiff's employment was terminated. Id. ¶ 36.

"Plaintiff believes Dr. Montgomery treated her with such hostility and assaulted her because she is a female." Id. ¶ 37. Dr. Montgomery never treated male staff members with the same type of hostility and aggression he showed Plaintiff and the other six female employees. Id. ¶¶ 19-21.

4

**B. Procedural History**

Prior to commencing this action, Plaintiff filed administrative charges with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 4. "The instant action was filed to preserve the Plaintiff's intentional tort claims." Id.

In the Complaint, Plaintiff alleges several causes of action pursuant to federal and state law: (1) sexual harassment and retaliation against all Defendants pursuant to Title VII and NYHRL; (2) common law assault and battery against Dr. Montgomery pursuant to New York law; and (3) negligence against Neurological and Dr. Montgomery pursuant to New York law. Id. ¶¶ 42-64. Plaintiff seeks monetary relief. Id. ¶ 64.

Neurological Associates moves to dismiss Plaintiff's Title VII and tort claims against them for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff's NYHRL claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). NA Mot. Both the State Defendants and MedBest seek to dismiss Plaintiff's Title VII and NYHRL claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). State Mot.; MedBest Mot.

Plaintiff has opposed the Motions, but consents to dismissal of her NYHRL claims against all Defendants. See Dkt. Nos. 21 ("Response to NA Motion") at 4 ("Plaintiff agrees that her state law claims under the New York Human Rights Act should be dismissed pursuant to the state election of remedies provision."); 22 ("Response to State Motion") at 4 (same); 38 ("Response to MedBest Motion") (failing to address MedBest's argument seeking dismissal of Plaintiff's NYHRL

claims).[3]

Accordingly, presently before the Court are Motions to dismiss Plaintiff's sexual harassment and retaliation claims against all Defendants pursuant to Title VII, and Plaintiff's tort claims against Neurological and Dr. Montgomery.

## III.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at

---

[3] "The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." Barmore v. Aidala, 419 F. Supp. 2d 193, 201-02 (N.D.N.Y. 2005) (citing Rizzo-Puccio v. Coll. Auxiliary Servs., Inc., 216 F.3d 1073 (2d Cir. 2000)); see also L.R. 7.1(b)(3).

555).  Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal.  See id. at 678-79.

## IV.    DISCUSSION

### A.  Title VII Sexual Harassment

#### 1.  The State Defendants

The State Defendants argue that Plaintiff has failed to exhaust administrative remedies, which are a prerequisite to commencing an action pursuant to Title VII.  State Mot. at 9-10.

It is well-settled in the Second Circuit that "[a] private plaintiff under Title VII must satisfy two conditions before commencing suit in federal court.  First, the complainant must file timely administrative charges with the EEOC. . . .  Second, the complainant must await dismissal of the administrative charge (or a failure to act) [before filing the civil action]."  McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5(f)(1)).  If the EEOC dismisses the charges, or elects not to pursue a civil action, it must provide the claimant with a notice, and the complainant may then commence a civil action within ninety days.  See id.  "Such notification is called a 'right-to-sue' letter because the notification is a prerequisite to suit."  Id. (citing NAACP v. Town of E. Haven, 259 F.3d 113, 115 n.4 (2d Cir. 2001)).

Here, Plaintiff states in the Complaint that "[t]he administrative prerequisites to suit are partially satisfied because Plaintiff has filed administrative charges with the New York State Division of Human Rights and the [EEOC], *which are currently pending with those agencies.*"  Compl. ¶ 4 (emphasis added); see also Resp. State Mot. at 7 ("It is true that the Plaintiff filed the instant action while administrative processing was ongoing.").  Plaintiff has clearly failed to comply

7

with the exhaustion requirements under Title VII, as she did not wait for the EEOC to dismiss the charges (or fail to act) before commencing this action.

Plaintiff has attempted to cure this procedural defect by asserting that, subsequent to filing her Complaint, she received from the EEOC her "right-to-sue" letter. <u>See</u> Resp. State Mot. at 7 (citing Dkt. No. 11-7). However, in ruling on a Motion to dismiss for failure to state a claim, the Court may not consider materials outside of the Complaint, unless incorporated by reference; Plaintiff does not mention the right-to-sue letter anywhere in her Complaint. <u>See</u> <u>Global Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 156 (2d Cir. 2006) (finding that "the district court committed reversible error when, in ruling that the complaint failed to state a claim for which relief could be granted, it considered matters outside plaintiff's complaint"). Therefore, Plaintiff has failed to exhaust administrative remedies, and, accordingly, her Title VII sexual harassment claim against the State Defendants is dismissed without prejudice.[4]

### 2. *Neurological Associates and MedBest*

"Sexual harassment is actionable under Title VII only if it is so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 270 (2001) (quoting <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 786 (1998) (other citations omitted)). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," as is necessary

---

[4] The Court notes that the administrative exhaustion requirement is not a jurisdictional requirement, but rather a prerequisite to suit. <u>See</u> <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 712 (2d Cir. 1996) (noting that the timeliness requirement of Title VII "is analogous to a statute of limitations"). The State Defendants were the only defendants to raise this argument, and because it does not present a jurisdictional issue, the Court may not raise it *sua sponte* on behalf of Neurological Associates or MedBest.

to be actionable under Title VII.  Id. at 270 (quoting Faragher, 524 U.S. at 788); see also Williams v. Cnty. of Westchester, 171 F.3d 98, 100 (2d Cir. 1999) (holding that, in order to meet his or her burden, a plaintiff must show "more than a few isolated incidents").  "In short, a plaintiff alleging a hostile work environment 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.'"  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)).

To decide whether this threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse.  Alfano, 294 F.3d 374 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993) (noting that relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance")).  Furthermore, it is "axiomatic" that a plaintiff alleging a sexual harassment claim under Title VII must demonstrate that the conduct occurred *because* of her sex.  Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis added).

As an initial matter, Plaintiff agrees to dismissal of her sexual harassment claim against Dr. Montgomery because there is no individual liability under Title VII.  See Resp. NA Mot. at 5 ("Dr. Craig Montgomery cannot face individual liability for sexual harassment.").  With respect to Neurological and MedBest, the parties' arguments are virtually identical, and the Court therefore consolidates their respective Motions for purposes of addressing this particular claim.

Both MedBest and Neurological argue that Plaintiff has failed to allege a continuous pattern of behavior; rather, Plaintiff's allegations amount to four isolated incidents over a two-and-a-half-

9

year period. <u>See</u> NA Mot. at 8-10; MedBest Mot. at 6-7. Moreover, they argue that the incidents in the Complaint were all gender-neutral criticisms of Plaintiff's work performance, with the exception of the "Is" nickname; however, the "Is" incident by itself was not so severe or pervasive as to constitute a Title VII claim for sexual harassment. <u>See</u> NA Mot. at 8-10; MedBest Mot. at 10, 13. Finally, they assert that Plaintiff's allegations that her male coworkers were not treated with the same level of hostility are wholly conclusory and unsupported by any facts. <u>See</u> NA Mot. at 9-10; MedBest Mot. at 6-7.

Turning to the allegations in the Complaint, Plaintiff alleges the following incidents in support of her Title VII sexual harassment claim: (1) in April, 2011 Dr. Montgomery screamed "What the fuck? Why are these patients showing up without what they fucking need? Now you have to fucking reschedule them," Compl. ¶ 18; (2) in or around September 2011, Dr. Montgomery began calling Plaintiff "Is," which Plaintiff and her coworkers understood to reference the line "Jane is an ignorant slut," <u>id.</u> ¶ 22; (3) on September 8, 2011, Dr. Montgomery "launched into a profanity-filled tirade against [Plaintiff] in front of patients," <u>id.</u> ¶ 21; (4) in January 2013, Dr. Montgomery again screamed profanities in Plaintiff's face while violently throwing papers around the office and "exclaimed to the whole office, 'I'm the fucking boss, I am in charge here, I know what's fucking going on here, I know who is fucking in the [operating room],'" <u>id.</u> ¶ 26; and (5) on May 16, 2013, Dr. Montgomery stated "I oughta fucking smash you in the fucking face for this one" and proceeded to knock Plaintiff out of her chair, <u>id.</u> ¶ 28.

Accepting Plaintiff's allegations as true, the Court certainly does not condone Dr. Montgomery's behavior. However, "[i]t is well-settled that a supervisor's mere criticism of an employee's work, however loud, harsh or ham-fisted, does not fall within the ambit of Title VII

unless [the supervisor's] conduct is so severe, pervasive, offensive and 'permeated with discriminatory intimidation' as to alter the terms and conditions of [the] subordinate's employment." Marcus v. Barilla Am. N.Y., Inc., No. 13-CV-6223L, 2014 WL 1123406, at *3 (W.D.N.Y. Mar. 21, 2014) (citing Harris, 510 U.S. at 21). In other words, hostile behavior that is gender neutral does not fall within the purview of Title VII. See Marshall v. N.Y. City Bd. of Elections, 322 F. App'x. 17, 18-19 (2d Cir. 2009) (affirming district court's dismissal of plaintiff's hostile work environment claim, finding that even though plaintiff's "allegations that her supervisor displayed a violent temper, stood over her with clenched fists on several occasions, disparaged her educational background, and engaged in crass behavior are troubling," Title VII "prohibits only harassment that is discriminatory").

    With the exception of the "Is" nickname, the Court agrees that the remaining allegations are gender-neutral criticisms of Plaintiff's work performance. Although involving profanity and unprofessional behavior, these allegations make no mention of Plaintiff's sex, and Plaintiff has provided no facts suggesting that this behavior was directed at her because she is female. Moreover, Plaintiff's argument that this facially-neutral behavior is discriminatory because male employees were not treated with the same level of hostility is wholly conclusory and unsupported by any facts in the Complaint. See Compl. ¶ 19. Plaintiff has not alleged a single instance involving Dr. Montgomery and a male employee—not to mention in the context of work-related criticism—that would allow the Court to draw an inference that Dr. Montgomery's verbal tirades were directed at Plaintiff because of her gender. See Marshall, 322 F. App'x. at 18-19. The Court therefore proceeds with the lone gender-based allegation—the "Is" comment—to determine whether Plaintiff has stated a plausible claim for sexual harassment under Title VII. See Alfano, 294 F.3d at 380

(identifying and excluding gender-neutral allegations before proceeding with Title VII sexual harassment claim analysis).

"As a general rule, incidents of sexual harassment must be 'sufficiently continuous and concerted in order to be deemed pervasive.'" Garcia v. Lewis, No. 05 CIV. 1153, 2005 WL 1423253, at *3 (S.D.N.Y. June 16, 2005) (quoting Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004)). The Complaint alleges that use of the "Is" nickname and accompanying notepads began "[a]round September 2011"; however, there is no allegation that the name calling or use of notepads depicting the name continued thereafter. See Compl. ¶¶ 22-23. Moreover, there is no evidence that this act occurred alongside any other sexually hostile acts or as part of a continuous pattern of behavior. Cf. Badlam v. Reynolds Metals Co., 46 F. Supp. 2d 187, 191 (N.D.N.Y. 1999) (denying summary judgment where plaintiff asserted that, *inter alia,* she was constantly referred to as an "old cunt," "slut," "whore," "bitch," "dyke," and "prostitute;" certain male workers tried to have her grab their penises; and coworkers exposed themselves to her). Thus, as pled, the "Is" incident is not sufficiently continuous or concerted to be deemed pervasive.

However, the Second Circuit has acknowledged that "a single act that transforms a plaintiff's workplace can be sufficient to establish a" sexual harassment claim. Garcia, 2005 WL 1423253, at *3 (citing Feingold, 366 F.3d at 149). Yet, the case law in this Circuit reveals that such findings are limited, and generally involve allegations far more severe than those before the Court. See, e.g., Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (reversing summary judgment in favor of defendant where female firefighter alleged vile and sexually explicit verbal abuse that challenged her competence, was witnessed by a large group that included her subordinates, and created a justified fear that she would be left in peril at fire scenes).

Furthermore, Plaintiff has not alleged that the nickname or the notepads affected the terms of her employment or unreasonably interfered with her work performance or environment.  See Quinn v. NYS Office of Temp. & Disability Assistance, 537 F. Supp. 2d 427, 430 (N.D.N.Y. 2008) (Kahn, J.) ("Plaintiff did not allege that her rejection of Russo's sexual advance affected the terms of her employment, led to any employment decision affecting her, or unreasonably interfered with her work performance or environment."); see also Howley, 217 F.3d at 154 (finding female firefighter's fear that her co-workers would leave her in peril sufficient to demonstrate an unreasonable interference with her work environment).  Thus, the "Is" incident, while clearly directed at Plaintiff because of her gender, was not so severe or pervasive as to have altered the conditions of her employment.  Accordingly, Plaintiff's Title VII sexual harassment claim against Neurological and MedBest is dismissed.

### B.  Title VII Retaliation

#### 1.  Neurological[5]

Neurological argues that Plaintiff's retaliation claim against it should be dismissed because the Complaint only contains vague, conclusory allegations that her employment was terminated; Plaintiff does not indicate *who* actually terminated her employment.  NA Mot. at 11-12.

Plaintiff did not respond to Neurological's argument in her opposition to the NA Motion.  See Resp. NA Mot.  As stated *supra*, "[t]he failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion."  Barmore, 419 F. Supp. 2d at 201-02.  Accordingly, Plaintiff's

_____

[5] As with Plaintiff's sexual harassment claim, Plaintiff also concedes that Dr. Montgomery cannot face individual liability for retaliation under Title VII.  See Resp. NA Mot. at 5.

retaliation claim against Neurological pursuant to Title VII is dismissed without prejudice.

### 2. The State Defendants

The State Defendants reiterate their failure to exhaust administrative remedies argument with respect to Plaintiff's Title VII retaliation claim. See State Mot. at 9-10. For the reasons stated *supra* dismissing Plaintiff's sexual harassment claim against the State defendants, her Title VII retaliation claim against them is also dismissed without prejudice.

### 3. MedBest

To state a claim of retaliation under Title VII, a plaintiff must show that: (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) plaintiff was thereafter subjected to an adverse employment action; and (4) there was a causal connection between plaintiff's protected activity and the adverse action. See Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007); Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006).

MedBest argues that: (1) Plaintiff was not engaged in a protected activity; and (2) even if she were engaged in a protected activity, there was no casual connection between the protected activity and the adverse employment action. MedBest Mot. at 16-17.

### a. Protected Activity

To satisfy the protected activity prong, a plaintiff need only "have had a good faith, reasonable belief that [s]he was opposing an employment practice made unlawful by Title VII." McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001). Internal or informal complaints of discrimination on a basis prohibited by Title VII are protected activity. See Amin v. Akzo Nobel Chems., Inc., 282 F. App'x. 958, 961 (2d Cir. 2008).

Here, it is undisputed that Plaintiff filed an internal complaint following the May 16, 2013, incident. However, MedBest argues that Plaintiff's filing of her complaint does not amount to protected activity because even if Plaintiff had a *good faith* belief that her complaint was based on unlawful sexual harassment, "[a]s a matter of law, [Plaintiff] could not have had a *reasonable* belief that the statements and conduct attributed to Dr. Mongtomery . . . amounted to sexual harassment prohitibted by Title VII or the NYHRL." MedBest Mot. at 18 (emphasis added). In support, MedBest cites Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998), where the Second Circuit affirmed the district court's decision to grant defendant judgment as a matter of law on plaintiff's Title VII sexual harassment claim after a jury had returned a verdict in favor of plaintiff.

MedBest's reliance on Galdieri-Ambrosini is misplaced. MedBest does not argue that Galdieri-Ambrosini and the present case are factually similar. Rather, MedBest appears to cite Galdieri-Ambrosini merely as an example of a plaintiff who held a good faith, yet unreasonable, belief that conduct complained of was prohibited by Title VII. See MedBest Mot. at 17. However, the Galdieri-Ambrosini court recognized that "[t]he reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." Galdieri-Ambrosini 136 F.3d at 292. Indeed, the Galdieri-Ambrosini court assessed the reasonableness of the plaintiff's belief at the conclusion of trial, after all evidence had been presented; in contrast, this action is before the Court only at the pleading stage. Thus, there has been no discovery or presentation of the evidence, and the Court is not in a position to assess the circumstances of Plaintiff's internal complaint. Galdieri-Ambrosini is therefore inapplicable at this juncture.

Moreover, other than its citation to <u>Galdieri-Ambrosini</u>, MedBest has only argued in conclusory terms that Plaintiff's complaint of unlawful discrimination was unreasonable. <u>See</u> MedBest Mot. at 18. Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged sufficient facts that she held a good faith, reasonable belief that she was the victim of unlawful sexual discrimination under Title VII or NYHRL when she filed her internal complaint.

### b. Causation

Causation can be established "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." <u>Gordon v. N.Y.C. Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000). If a plaintiff is relying on indirect evidence, the temporal proximity between the employer's knowledge of the protected activity and the adverse employment action must be "very close." <u>Breeden</u>, 532 U.S. at 273-74. The Second Circuit, however, has not established a "bright line" rule that defines "the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." <u>Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cnty.</u>, 252 F.3d 545, 554 (2d Cir. 2001).

Here, Plaintiff filed her internal complaint against Dr. Montgomery on or immediately after May 16, 2013, and she was terminated almost three months later on September 9, 2013. <u>See</u> Compl. ¶¶ 30-31, 36. Given that there is no bright line rule in the Second Circuit for establishing temporal proximity, MedBest cites cases finding time periods of less than three months as too

attenuated to support an inference of causation, <u>see</u> MedBest Mot. at 19 (listing cases), and Plaintiff cites cases demonstrating just the opposite, <u>see</u> Resp. MedBest Mot. at 19.

The Second Circuit has purposefully avoided drawing a bright line rule concerning temporal proximity to enable a court to "to exercise its judgment about the permissible inferences that can be drawn . . . in the context of particular cases." <u>Summa v. Hofstra Univ.</u>, 708 F.3d 115, 128 (2d Cir. 2013) (citing <u>Espinal v. Goord</u>, 558 F.3d 119, 129 (2d Cir. 2009)). Notably, all of the decisions on which MedBest relies addressed motions for summary judgment, where discovery had been conducted and the courts could weigh relevant circumstances along with the temporal proximity. <u>See, e.g.</u>, <u>Murrary v. Visiting Nurse Servs. of N.Y.</u>, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007); <u>Housel v. Rochester Inst. of Tech.</u>, No. 10-cv-6222, 2014 WL 1056576, at *12 (W.D.N.Y. Mar. 17, 2014). Here, on the other hand, the parties have not yet conducted discovery to further explore the circumstances surrounding Plaintiff's termination. Given that this action is only at the pleading stage, and that the Second Circuit has found a passage of six months between the protected activity and retaliatory act to be sufficient, <u>see</u> <u>Espinal</u>, 558 F.3d at 129, MedBest has failed to demonstrate that Plaintiff's termination three months after filing her complaint is too attenuated such that she could not be entitled to relief. Accordingly, MedBest's Motion to dismiss Plaintiff's Title VII retaliation claim is denied.

### C. State Law Claims

Neurological Associates argues that, in the event Plaintiff's federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. NA Mot. at 13-14.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." For purposes of § 1367(a), claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks omitted). "[T]he balance of factors to be considered under the pendant jurisdiction doctrine [are] judicial economy, convenience, fairness and comity." In re Merrill Lynch Ltd. Partnerships Litig., 154 F.3d 56, 61 (2d Cir. 1998). It is within the Court's discretion to decline to exercise supplemental jurisdiction. See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).

Here, the only surviving federal claim is Plaintiff's retaliation claim against MedBest, but Plaintiff's state law claims are only against Neurological and Dr. Montgomery. Although the respective claims relate to Plaintiff's employment, there is little overlap in the underlying factual circumstances and legal claims. Plaintiff's state law claims relate only to the physical altercation that occurred on May 16, 2013, and do not concern MedBest. In contrast, her retaliation claim predominantly involves events occurring after May 16, 2013, and entirely distinct legal issues. Thus, the Court finds that Plaintiff's state and federal claims do not necessarily "derive from a common nucleus of operative fact."

Moreover, because Neurological and Dr. Montgomery are not subject to the federal claims, it cannot be said that it would be convenient or fair to hale them into federal court. Furthermore, it appears that both Dr. Montgomery and Neurological are New York citizens, see Compl. ¶¶ 9, 14, and Plaintiff has not argued that she would be barred by the statute of limitations from bringing her

tort claims in state court. Finally, resolution of Plaintiff's retaliation claim would have no impact on the merits of her state law claims. Therefore, the Court finds that the balance of factors weighs against exercising supplemental jurisdiction over Plaintiff's state law claims. However, those claims are dismissed without prejudice, and if Plaintiff elects to replead her federal claims against Neurological, Dr. Montgomery, and/or the State Defendants, she may replead her state law claims as well.

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant The Research Foundation for the State University of New York's Motion (Dkt. No. 8) to dismiss is **GRANTED**;[6] and it is further

**ORDERED**, that Defendant The Research Foundation for the State University of New York's is **DISMISSED** as a defendant in this action; and it is further

**ORDERED**, that Defendants Dr. Craig T. Montgomery and Neurological Associates of Central New York, LLP.'s Motion (Dkt. No. 11) to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is **GRANTED**; and it is further

**ORDERED**, that Defendants State University of New York Upstate Medical University, The State University of New York, and Upstate University Hospital's Motion (Dkt. No. 16) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**; and it is further

**ORDERED**, that Defendant MedBest Medical Management, Inc.'s Motion (Dkt. No. 19) to

---

[6] As noted *supra*, Plaintiff stipulated to dismissing The Research Foundation for the State University of New York as a defendant to this action, and declined to oppose its Motion to dismiss. Accordingly, all claims against Defendant The Research Foundation for the State University of New York are dismissed with prejudice. See Dkt. No. 31.

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED in part and DENIED in part**, consistent with this Memorandum-Decision and Order.  Plaintiff's Title VII sexual harassment and NYHRL claims against Defendant MedBest Medical Management, Inc. are hereby **DISMISSED**; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      February 27, 2015
            Albany, NY

Lawrence E. Kahn
U.S. District Judge